UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOLOMON MAYE, )<br>    *Plaintiff*, )<br>)<br>v. )<br>)<br>DAVID STROLLO, )<br>    *Defendant*. ) | 3:21-CV-00527 (SVN)<br><br><br><br><br><br>February 2, 2023 |

## **RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

In this civil rights action, Plaintiff Solomon Maye has alleged that Defendant Supervisory Assistant State's Attorney David Strollo improperly instructed law enforcement officers to evict Plaintiff from his place of business in violation of state and federal law. Defendant has moved to dismiss the complaint, arguing that he is entitled to prosecutorial and qualified immunity, and that, even were he not, Plaintiff's complaint fails to state a claim on which relief can be granted.

For the reasons discussed below, Defendant's motion is GRANTED in part, with respect to Plaintiff's Fourteenth Amendment claim, and DENIED in all other respects.

**I.  FACTUAL BACKGROUND**

The facts discussed below are taken from the complaint and presumed to be true for the purposes of the present motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff is a business owner who operated his business at 746 Orchard Street, New Haven, Connecticut. Compl., ECF No. 1, ¶ 1. He leased this property from Devonne Canady. *Id.* Plaintiff had been in an ongoing dispute with Canady regarding his continued use of the property, and Canady had served Plaintiff with a "notice to quit" on August 12, 2020. *Id.* ¶ 2. Canady had not, however, served Plaintiff with eviction papers. *Id.* On September 4, 2020, New Haven Police Department ("NHPD") Detectives Soto, Carr, and Folch were called to Plaintiff's place of

business.  *Id.* ¶ 1.  After confirming Plaintiff's identity, Carr told Plaintiff that he had to leave, or he would be arrested.  *Id.* ¶ 3.  Plaintiff asked why he had to leave, and informed the detective that he was a tenant, had a lease agreement, and operated his business there.  *Id.* ¶ 4.  The detectives acknowledged that Plaintiff was a sublessor of the property but continued to threaten him with jail "or worse" if Plaintiff did not leave the building.  *Id.* ¶ 5.  In the face of these threats, Plaintiff left his business without being served eviction papers.  *Id.*

One week later, Plaintiff met with NHPD Detective Etenne concerning the September 4 incident.  *Id.* ¶ 7.  Etenne informed Plaintiff that there was "nothing he could do," as Connecticut Supervisory State's Attorney David Strollo had "ordered-advised" the officers "to put [Plaintiff] out, and not let [him] back in."  *Id.* ¶ 8.  On March 2, 2021, a state court judge ruled that the entry and detainer on September 4, 2020, was unlawful, and ordered that Plaintiff be allowed to return to his place of business.  *Id.* ¶ 11.

Plaintiff alleges Defendant issued the eviction order due to the prior history between the two of them.  *Id.* ¶ 9.  Specifically, according to a news article Plaintiff has attached to his complaint, in 2017, Plaintiff was allowed to withdraw his guilty plea in a narcotics case Defendant was prosecuting, after information came to light regarding police corruption.  *Id.*; ECF No. 1-2.  At the time, Defendant argued against allowing Plaintiff to withdraw the guilty plea and, even after the state court allowed Plaintiff to withdraw it, Defendant noted that Plaintiff still had multiple other unrelated narcotics charges to face.  ECF No. 1-2 at 2, 6.  Plaintiff alleges that this previous history is why Defendant ordered the illegal eviction.  Compl. ¶ 9.

Plaintiff contends that ordering his eviction was a violation of his constitutional rights under the Fourth and Fourteenth Amendments.  *Id.* ¶¶ 6, 10.  He further alleges that Defendant's conduct violated Connecticut General Statutes §§ 47a-42a(a) (relating to eviction of tenants and

occupants from commercial property), 47a-46 (relating to entry and detainer), and 53a-214 (relating to a criminal misdemeanor violation for criminal lockout). Plaintiff requests compensatory and punitive damages under 42 U.S.C. § 1983 from Defendant in his individual capacity and injunctive relief in the form of a court order requiring training for Defendant concerning Conn. Gen. Stat. § 47a-42a(a). *Id.* at 5.[1]

## II.    LEGAL STANDARD

When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

The Court, however, is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible

---

[1] Plaintiff is also pursuing a separate action against the City of New Haven and NHPD officers Carr, Folch, and Soto. *See Maye v. New Haven et al.*, D. Conn. No. 3:21-cv-40 (SVN).

claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

### III. DISCUSSION

Defendant's motion to dismiss asserts that all claims against him are barred by absolute prosecutorial immunity and qualified immunity. Defendant further contends that, even if the claims are not barred by either immunity defense, Plaintiff has failed to state a claim for which relief may be granted and has failed to allege Defendant's personal involvement in the actions alleged in the complaint. Plaintiff disputes each of these contentions. For the reasons discussed below, the Court holds that Defendant is entitled to neither prosecutorial immunity nor, at this stage, qualified immunity. It further holds that Plaintiff has stated a plausible Fourth Amendment violation, but not a plausible Fourteenth Amendment violation.

#### A. Personal Involvement

Before the Court turns to whether Plaintiff's allegations adequately state that he was deprived of a right secured by the Constitution, it evaluates whether the complaint sufficiently alleges Defendant's personal involvement in the actions underlying the suit. The Second Circuit requires that a plaintiff alleging claims under § 1983 establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (holding that a plaintiff must adequately plead personal involvement of the defendant to state a § 1983 claim). In the Second Circuit, "a 'direct

participant' includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217, 233 (2d Cir. 2014).

Here, Plaintiff alleges Defendant "ordered-advised the [NHPD] to put [him] out, and not let [him] back in." Compl. ¶ 8. Defendant claims this is conclusory and insufficient to establish his personal involvement. ECF No. 37-1 at 12. Defendant, however, neglects to include that this information was allegedly relayed to Plaintiff by NHPD Detective Etenne at a meeting between Plaintiff, Plaintiff's wife, and the detective on September 11, 2020. Compl. ¶ 8. Plaintiff's allegation that he learned of Defendant's involvement from a specific NHPD detective at a specific meeting on a specific date makes the allegation rise above mere speculation, giving it sufficient plausibility to withstand a motion to dismiss. Lending further plausibility to this statement is the allegation that Defendant resents Plaintiff because Plaintiff was allowed to withdraw his guilty plea to narcotics charges in an earlier criminal proceeding prosecuted by Defendant. *Id.* ¶ 9. Thus, drawing all reasonable inferences in favor of Plaintiff, the complaint plausibly alleges that Defendant was personally involved in ordering the police to illegally evict Plaintiff from his place of business based on a prior personal relationship between Plaintiff and Defendant.

B. Absolute Prosecutorial Immunity

Defendant next argues that the case must be dismissed because he is entitled to absolute prosecutorial immunity. Prosecutors are absolutely immune from liability where they are sued for actions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). In examining whether absolute prosecutorial immunity applies, the Court uses a functional approach, which objectively looks to the nature of the function performed, not the identity of the actor who performed it. *See Hill v. City of New York*, 45 F.3d

653, 660–62 (2d Cir. 1995) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Importantly, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Id.* at 273.

Thus, the relevant question is "whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012). Whether something is within a prosecutor's function "depends chiefly on whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate." *Warney v. Monroe County*, 587 F.3d 113, 123 (2d Cir. 2009). Prosecutorial immunity does not apply when prosecutors act in an investigative or administrative capacity not undertaken in preparation for judicial proceedings. *See Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998); *see also Hill*, 45 F.3d at 661. Finally, it is well-settled that giving legal advice to the police is not covered by absolute immunity as this is outside the scope of an actual judicial proceeding and is not "intimately associated with the judicial phase of the criminal process." *Burns v. Reed*, 500 U.S. 478, 496 (1991).

The Court finds that absolute prosecutorial immunity does not protect Defendant's actions here. Defendant's argument fails to address how his actions, as alleged by Plaintiff, constitute a prosecutorial function. Rather, the Court finds that the allegations here are more akin to giving of legal advice to the police. *See Burns*, 500 U.S. at 496 (providing that giving legal advice to the police is not covered by absolute immunity). Specifically, Plaintiff alleges that Defendant "ordered-advised" the police officers "to put [him] out, and not let [him] back in." Compl. ¶ 8. Plaintiff does not allege, and Defendant does not suggest, that there was a pending or anticipated criminal proceeding against him, or how Defendant's actions might be related to that proceeding. Rather, Plaintiff affirmatively alleges that there was no judicial process attached to this eviction,

6

stating that the police did not give him an eviction order, and that he did not receive notice of eviction from his landlord. *Id.* ¶¶ 2, 5. Defendant contends in a conclusory fashion that Plaintiff's allegation that Defendant directed the police to illegally evict him is "insufficient to pierce the veil of prosecutorial immunity," as the alleged actions were "intimately associated with the judicial phase of the criminal process." ECF No. 37-1 at 7–8. Defendant does not, however, elaborate on this statement or explain in any way how this is true. Indeed, Defendant cites to no criminal case against Plaintiff that was pending or even contemplated at the time of the actions alleged in the complaint. Based on the allegations of the complaint, which the Court is bound to accept as true at this stage, Defendant instructed police to evict Plaintiff from his place of business based on lingering animosity from a prior dispute between the parties. Such actions are unrelated to any then-pending or contemplated criminal prosecution and are not reasonably within the functions of a prosecutor. Accordingly, the Court concludes that absolute prosecutorial immunity does not bar Plaintiff's claims.

      C. <u>Qualified Immunity</u>

Defendant next argues that even if he is not entitled to absolute immunity, the case must be dismissed because he is protected by qualified immunity. Defendant is correct that when a prosecutor engages in actions not protected by absolute immunity, he is still potentially protected by the doctrine of qualified immunity. *Buckley*, 509 U.S. at 273. This doctrine shields governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability while they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The United States Supreme Court has established a two-pronged test governing the qualified immunity defense. Under the first prong, a court "must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Id.* at 232. Under the second prong, "the court must decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* A police officer's conduct "violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "An official is therefore entitled to immunity if his action was 'objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *X–Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999)).[2]

Here, Plaintiff has alleged that Defendant violated both his Fourth Amendment right to be free from an unreasonable seizure and his Fourteenth Amendment right to due process. Defendant argues, as part of his contention that he is entitled to dismissal on qualified immunity grounds, that Plaintiff has failed to state a claim under 42 U.S.C. § 1983. To state a claim for relief in an action brought under § 1983, plaintiffs must establish that (1) the defendant was acting under the color of state law and (2) the alleged action deprived the plaintiff of a right secured by the Constitution

---

[2] A court may use its discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Here, Defendant argues only the first prong: that Plaintiff has failed to state a violation of his constitutional rights. As Defendant does not argue that any possible constitutional violation was not clearly established, the Court will examine only whether Plaintiff has alleged a constitutional violation and, if he has, will assume it was clearly established for purposes of this motion to dismiss.

or laws of the United States. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Defendant does not dispute that the actions alleged in the complaint occurred under color of state law. Accordingly, the Court finds that the complaint adequately alleges Defendant was acting under color of state law.

As discussed below, the Court also holds that Plaintiff has adequately alleged a violation of his Fourth Amendment rights, but not his Fourteenth Amendment rights. As Defendant does not argue that a Fourth Amendment right under these circumstances was not clearly established, the Court further holds that Defendant has not established he is entitled to qualified immunity at this juncture.

## 1. *Fourth Amendment Claim*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has defined a seizure of property to mean some meaningful interference with an individual's possessory interests in that property. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992). The Fourth Amendment however does not prevent all government seizures, but rather only those that are unreasonable. As a result, "the ultimate standard" for determining whether a seizure satisfies the Fourth Amendment is reasonableness. *Id.* at 71. "To determine whether a seizure is unreasonable, a court must 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion' and determine whether 'the totality of the circumstances justified [the] particular sort of . . . seizure.'" *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

Here, Plaintiff sufficiently pleads an unreasonable seizure in violation of his Fourth Amendment rights. Initially, Plaintiff alleges that officers working for the NHPD arrived at his place of business and informed him that he had to leave the premises or he would be arrested, despite presenting no papers or other legal justification for evicting Plaintiff. Compl. ¶¶ 3, 5. As a result, Plaintiff ceased operating his business and left the property. *Id.* ¶ 5. Taken as true, the officers' alleged actions in "effect[ing] an eviction" meaningfully interfered with Plaintiff's right to use the property, such that the acts alleged constitute a seizure under the Fourth Amendment. *Soldal*, 506 U.S. at 69; *Gonzalez v. City of Bridgeport*, No. 3:07-CV-435 (EBB), 2008 WL 4080086, at *5 (D. Conn. Sept. 2, 2008) (denying police officers' motion for summary judgment on Fourth Amendment claim where officers evicted a tenant from her dwelling prior to the landlord obtaining a proper notice of eviction for the plaintiff).

Importantly, this is not a case where officers were "acting pursuant to a court order," such that their actions might be considered reasonable on that basis. *Soldal*, 506 U.S. at 71. Instead, this is a case much like *Soldal* itself. In *Soldal*, a landlord notified the sheriff's department that it wanted to evict a tenant prior to having received a judgment of eviction. *Id.* at 58. Despite not having a court order, the sheriff's department evicted the plaintiff and unreasonably seized his home. *Id.* Here, similarly, the NHPD, without a court order, allegedly evicted Plaintiff from his place of business despite his protestations that he had a legal right to be there and use the property. Compl. ¶¶ 4, 5. Crucially, Plaintiff alleges in a non-conclusory fashion that this action was undertaken at the direction of Defendant. *Id.* ¶ 8. Thus, as in *Soldal*, Plaintiff has adequately alleged a violation of his Fourth Amendment right to be free from unreasonable seizures.

*2. Fourteenth Amendment Claim*

Turning to Plaintiff's Fourteenth Amendment claim, initially the Court notes that while Plaintiff does not specify precisely what type of Fourteenth Amendment claim he is attempting to bring, his claim is best characterized as a procedural due process claim based on the allegations in the complaint. Plaintiff is not claiming Defendant's actions were "so egregious" or "so outrageous that [they] may fairly be said to shock the contemporary conscience" and thus violated his substantive due process rights. *Pollok v. Chen*, 806 F. App'x 40, 45 (2d Cir. 2020) (summary order). Rather, he is claiming the police, at the direction of Defendant, did not obtain "eviction papers" and afford him the procedural safeguards to which he is entitled. Compl. ¶¶ 5, 6. The Court therefore interprets the complaint to allege a procedural due process violation. To prevail on a procedural due process claim based on a deprivation of a property right, "a plaintiff must (1) identify a property right, (2) show that the state has deprived him of that right, and (3) show that the deprivation was affected without due process." *Hong Tang v. Visnauskas*, 847 F. App'x 24, 25 (2d Cir. 2021) (summary order) (quoting *Mehta v. Surles*, 905 F.2d 595 (2d Cir. 1990)).

Here, Defendant argues that Plaintiff has once again failed to properly allege Defendant's personal involvement, which the Court has addressed above. Additionally, Defendant contends Plaintiff has not alleged that he has been deprived of a property interest, and that, even if he had been deprived of such an interest, he was provided all process he was due via the post-deprivation hearing that took place in the Housing Session of the Connecticut Superior Court. ECF No. 37-1 at 14; ECF No. 37-3 (Housing Session decision). While it has long been established that if the right to procedural due process "is to serve its full purpose, then, it is clear that [due process] must be granted at a time when the deprivation can still be prevented," *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972), the Supreme Court has recognized that when a deprivation takes place by a "random,

11

unauthorized act by a state employee, rather than an established state procedure," an adequate post-deprivation hearing satisfies the requirements of due process, *Hudson v. Palmer*, 468 U.S. 517, 532 (1984). The rationale for this rule is that pre-deprivation procedures are impracticable in the situation where the state employee acts in a random, unauthorized fashion because the state cannot predict when such action will occur. *Id.* Thus, when evaluating whether a deprivation of property took place without due process, the Court must determine whether a claim is "based on established state procedures" or "on random, unauthorized acts by state employees." *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006).

Here, even assuming that Plaintiff has properly pleaded a deprivation of a property interest, he has pleaded only a random, unauthorized deprivation of his rights by Defendant that entitles him only to a post-deprivation hearing. Specifically, his allegations are that Defendant "ordered-advised" NHPD to illegally evict him from his place of business. Compl. ¶ 8. Plaintiff does not allege that Defendant was acting as part of a system or procedure. In fact, he alleges just the opposite. The complaint emphasizes the extrajudicial nature of Defendant's actions, describing the eviction as "illegal" and without any notice or eviction papers. Compl. ¶¶ 2, 5, 6. These allegations support a finding that Defendant's alleged actions were random and unauthorized and, therefore, that a post-deprivation hearing is all that was required. *See Dekom v. Nassau County*, 595 F. App'x 12, 14 (2d Cir. 2014) (summary order) (holding that a post-deprivation hearing was sufficient where the plaintiff alleged that the defendants' actions violated New York law and local political party policies and procedures, rendering them "random and unauthorized"); *Palmer v. City of New York*, 564 F. Supp. 3d 221, 248 (E.D.N.Y. 2021) (holding that allegations that the removal of plaintiffs from their home was "unlawful" and in contravention of state court orders established, for purposes of a motion to dismiss, that the defendants' alleged misconduct was

random and unauthorized); *Pelt v. City of New York*, No. 11-cv-5633 (KAM) (CLP), 2013 WL 4647500, at *11–12 (E.D.N.Y. Aug. 28, 2013) (holding that allegations that defendants unlawfully evicted the plaintiff and flouted state court notice procedures were appropriately characterized as alleging random and unauthorized acts, such that a post-deprivation hearing satisfied due process requirements).

Plaintiff's submission of a page of the Landlord/Tenant Disputes Police Training Manual does not alter the Court's conclusion. ECF No. 39-1 at 10. Initially, this document was not attached to, incorporated by reference, or integral to the complaint and, thus, the Court will not consider it on this motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Even were the Court to consider it, however, this page provides that "most landlord-tenant complaints are handled by the civil court system" and that only certain criminal parts involve police intervention. ECF No. 39-1 at 10. For those criminal issues, the manual allows officers to contact a supervisory states attorney assigned to housing matters. But Defendant is not listed as one of those attorneys, and Plaintiff has not alleged Defendant held such a position at the time of the incident in question. Moreover, while the manual provides that officers may seek advice from a supervisory state's attorney, it does not authorize the state's attorney to make a decision to evict a tenant without the appropriate court order. Therefore, even were the Court to consider this exhibit, it would not support the position that the actions taken by Defendant were taken pursuant to established state procedures, rather than appropriately characterized as random, unauthorized action.

Where, as here, a plaintiff alleges a random and unauthorized deprivation of property, a plaintiff has been provided all process due as a matter of law as long as the state provided a "meaningful post-deprivation remedy." *Hudson*, 468 U.S. at 518. Plaintiff here alleges that a

"state court judge has ruled the 'eviction' was illegal and let [him] back in the building." Compl. ¶ 11. The Court may take judicial notice of that decision as a public record, *see Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order), and may also consider the decision because it was effectively incorporated by reference in Plaintiff's complaint, *see* Compl. ¶ 11; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). First, the Housing Session decision notes that a "full hearing on the order to show cause in this entry and detainer matter" was held virtually on January 28, 2021, and the order is characterized as a judgment for Plaintiff after a "completed trial." *See* ECF No. 37-3 at 2.[3] A judicial trial "represents the epitome of full process." *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001). In addition, the Housing Session decision also specifies that Plaintiff, his landlord, and the landlord's attorney were present; that both parties were provided the opportunity to be heard and present their evidence; and that each side called witnesses and presented exhibits. ECF No. 37-3 at 2. These are the hallmarks of sufficient process. Plaintiff does not argue that the post-deprivation hearing was inadequate; indeed, it appears to have been a robust judicial trial. Because Plaintiff was afforded adequate post-deprivation process, his claim for a violation of his Fourteenth Amendment rights must fail.

### 3. Availability of Qualified Immunity

In sum, Plaintiff has adequately pleaded that Defendant violated his rights under the Fourth Amendment, but not his rights under the Fourteenth Amendment. As noted above, Defendant has not argued that Plaintiff's Fourth Amendment rights in this context were not clearly established at the time of the events in question, and thus the Court will assume they were. Therefore, at this time, Defendant has not demonstrated his entitlement to qualified immunity and is not entitled to

---

[3] The parties in the Housing Session matter were Plaintiff and Canady, Plaintiff's landlord. Because Canady initiated the call to police that caused them to seek advice from Defendant and confront Plaintiff about leaving his business on September 4, 2020, the Court considers this proceeding to be the post-deprivation hearing to which Plaintiff was entitled.

dismissal on this ground. *See Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) (summary order) ("Defendants advancing a qualified-immunity defense at the motion to dismiss stage face[ ] a formidable hurdle." (internal citations omitted)).

### IV. STATE LAW CLAIMS

Finally, Defendant's sole argument related to Plaintiff's state law claims is that since all the federal claims at issue should be dismissed, the Court should decline to exercise supplemental jurisdiction over the state claims and dismiss those as well. Defendant offers no other arguments why the state law claims should not proceed.[4] As discussed above, Plaintiff's claim for a violation of his Fourth Amendment rights will continue and, the Court finds the state law claims are so related to the constitutional claims as to "form part of the same case or controversy." 28 U.S.C. § 1367(a). Thus, the Court will continue to exercise supplemental jurisdiction and allow the state law claims to proceed in federal court as well.

### V. CONCLUSION

For the reasons discussed herein, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's claim for violation of due process under the Fourteenth Amendment is DISMISSED. Plaintiff's claims for violation of his rights under the Fourth Amendment and for violations of state law shall proceed. As the parties have not yet filed their Rule 26(f) report, and there is no operative scheduling order in this case, the parties shall file their Rule 26(f) report no later than February 23, 2023.

---

[4] For instance, Plaintiff claims a violation of Conn. Gen. Stat. § 47a-42a, which provides the procedures for an owner or lessor or their representative to deliver a notice to quit possession, among other things. Defendant has not argued that this statute does not create a private right of action that Plaintiff can seek to enforce.

**SO ORDERED** at Hartford, Connecticut, this 2nd day of February, 2023.

                                           */s/ Sarala V. Nagala*
                                           SARALA V. NAGALA
                                           UNITED STATES DISTRICT JUDGE